# United States District Court
# Western District of Wisconsin

Donald Means ,
(Full name of plaintiff[s])

#89203 ,
(Prisoner I.D. Number)

Case No. 11 C 003
(Provided by clerk of court)

Plaintiff(s),

v.

Greg Grams, Warden, et.al.
(S. Severson, Sergeant) ,
(Full name of defendant[s])

Defendant(s).

## COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983

I. **PLACE OF PRESENT CONFINEMENT** (Provide full address)
Columbia Correction Institution 2925 Columbia Dr. Portage, WI 53901 (At that time)

    A.    Is there a grievance procedure in your prison/jail?  YES ☒    NO ☐

    B.    Have you filed a grievance concerning the facts relating to this complaint?
        YES ☒    NO ☐

    C.    If you have used the grievance process:

        1.    Describe what you did and the result, if any.
            I wrote to Unit Manager, the Chaplain, the program Supervisor, filed Inmate complaint, 1st, 2nd, and 3rd steps-(Madison). All dismissed.

        2.    Is the grievance process completed?  yes.

    D.    If you did not use the grievance process, explain why not.

4/07
P\Forms\42USC1983.Complaint

II. **PARTIES**

A. Your name (Plaintiff) Donald Means

B. Prisoner I.D. Number #089203

C. Your address 2925 Columbia Drive

(For additional plaintiffs provide the same information in the same format on a separate page.)

D. DEFENDANT (name) Mardell Petras

is employed as Programs Supervisor

at Columbia Correctional Institution

E. Additional DEFENDANTS (names and positions): Leo Campbell, is employed as the prison's Chaplain. Brian Franson, is employed as Special Management Complex Unit Manager.

III. **PREVIOUS LAWSUITS**

A. Have you begun other lawsuits in state or federal court relating to the same facts involved in this action?     YES ☐     NO ☒

B. Have you begun other lawsuits in state or federal court relating to your imprisonment?     YES ☐     NO ☒

C. If your answer is YES to either of the above questions, provide the following requested information.

1. Parties to the previous lawsuit

Plaintiff(s): _____

Defendant(s): _____

2. Date filed _____

3. Court where case filed (if federal court, name district; if state court, name the county) _____

4. Case number and citation _____

5. Basic claim made _____
_____

6. Current status (for example: Was the case dismissed? Was it appealed? Is it still pending?) _____
_____

7. If resolved, date of disposition _____

8. If resolved, state whether for _____
(Plaintiff or Defendant)

(For additional cases, provide the above information in the same format on a separate page.)

## IV. STATEMENT OF CLAIM

A. State as briefly as possible the facts of your case. Describe how each named defendant is involved. Include the names of other persons involved, dates, and places. Describe specifically the injuries incurred. Do not give legal arguments or cite cases or statutes. You may do that in Item "B" below. If you allege related claims, number and set forth each claim in a separate paragraph. Use as much space as you need to state the facts. Attach extra sheets, if necessary. Unrelated separate claims should be raised in a separate civil action.

This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C. Section 1331 and 1343 (a)(3).

The Western District of Wisconsin is an appropriate venue under 28 U.S.C. Section 1391(b)(2) because it is where the events giving rise to

**STATEMENT OF CLAIM continued**

this claim occurred.

Plaintiff, (Donald Means) is and was at all times mentioned herein a prisoner of the State of Wisconsin in the custody of the Wisconsin Department of Corrections. He is currently confined in Wisconsin Resource Center in Winnebago, Wisconsin.

Defendant (Greg Grams) is the Warden of Columbia Correctional Institution. He is legally responsible for the operation of Columbia Corrections and for the welfare of all the inmates of that prison.

Defendant (S. Severson) is a Correctional Officer of the Wisconsin Department of Corrections who, at all times mentioned in this complaint, held rank of sergeant and was assigned to Columbia Correctional Institution. (Continued) → (on Page 4 a) Attached

B. State briefly your legal theory or cite appropriate authority.

(Please See: Page 4e)

STATEMENT OF CLAIM, continued from Pg.4

Defendant Mardell Petras is a Correctional State employee of the Wisconsin Department of Corrections, who is at all times mentioned in this complaint, held the title of Program Supervisor and was assigned at Columbia Correctional Institution (CCI).

Defendant Leo Cambell is a correctional state employee of the Wisconsin Department of Corrections, who is at all times relevant in this complaint; held the title of Chaplain as assigned at Columbia correctional institution (CCI).

Defendant Brian Franson is a correctional state employee of the Wisconsin Department of Corrections, who is at all times relevant in this complaint; held the title of Unit Manager of the Special Management Complex (SMU) as assigned at (CCI).
Lawsuit brought against each defendant in their individual and official capacity; at all times relevant in this complaintdefendants acted under color of state law.

Statement of Facts (Averments):

(1) On 7/20/2010 Plaintiff, while incarcerated at C.C.I., was placed on the list for the Fast of Ramadan by defendant Campbell.

(2) On 8/10/2010 Plaintiffs name appeared on the list to begin the Ramadan Fast ( Ramadan: the month Muslims are called to fast for 30 consecutive days once per year.).

(3) As the Plaintiffs religious obligation to begin fasting began there was a Correspondence/Memorandum posting on the unit board that consequently stated: "The Ramadan Fast will be in effect from dawn on Wednesday, August 11, 2010 at 4:15 A.M., until sunset on Thursday, September 9, 2010. All those involved in the Ramadan Fast must have declared that they are of the Islam religion on their religious preference form." (See: EXIBT A & EXIBT B)

(space omitted)

(4) The court should be aware that there are two parts to this religious practice of Islam. The first part is to successfully complete 30 days of fasting. The second part is to participate in the feast of 'Eid-al-Fitr', which according to the faiths belief is to last for three days. For reasons unknown to this writer, the feast only occurs within three days after the fasting has ended in the prison system. (more facts to come on this ahead)

(5) On 9/9/2010, the night in which Ramadan was to end, I was contacted by the Unit Psychologist (Andrea Nelson), who expressed her concerns regarding the medication I was discontinued consuming. (This writer writes "I" in place of Plaintiff for time and space preservation due to limited resources.)

(6) Dr. Andrea Nelson was informed about the medication by 2nd Shift Security Staff as they appeared concerned and it was then decided that Plaintiff would be transferred to another unit within the institution. Plaintiff was moved from Unit 6 to Unit 7, a more secure placement. The Special Management Complex is made up of two sister units called "Special Management Units (SMU). The units are there for inmates with mental health issues. Unit 6 is more open and allow more activity to occur for functioning inmates with mental illness. Unit 7 houses mentally ill inmates who may need to be in a more

## Statement of Facts (cont. from Page 4a)

secure setting. SMU has special provision in order for the units to function daily; i.e. school, recreation, library, etc..
Unit 7 differentiates in that it has a color phase system in place wherein one advances and receives incentive gradually while being marked by a color matching the level given the privileges corresponding to the color.

(7) On 9/9/2010, while still fasting, I was dropped to a lower color phase, yellow. Yellow means that the inmate cannot go anywhere off of the unit without being escorted by a Correctional Officer.

(8) While being escorted by an officer on 9/10/2010, over to the Gymnasium, Plaintiff happened to run into a security officer and immediately asked the officer about the Eid-al-Fitr Feast, to which the officer stated that the institution (CCI) had already allowed the Muslims to have their Eid Feast. Plaintiff was not afforded the right to participate in this religious feast.

(9) The institution staff (defendants) failed to recognize the inmates right to participate in this feast. The Plaintiffs constitutional right was infringed upon by afore mentioned defendants. The plaintiff is a known Muslim, and so was known at the time, and had been on the list to take part in this religious yearly order.

(10) On 9/10/2010, Plaintiff wrote to Defendant Cambell (Chaplain), [see EXIBT C], and told him that "by [plaintiff] being on Special Management Unit (SMU) No one made special provisions or took preparatory action or measures in the event that someone completed Ramadan on SMU." The chaplain, defendant Campbell, gave a written response and states: "YOU WERE NOT ON THE RAMADAN LIST." (EXIBT-C-1)

(11) Defendant Campbell was untruthful in his written statement (EXIBT C-1) signed and dated by defendant Campbell, 9/15/10. This is evidenced by an identical "interview/Information request" form signed and dated by Chaplain Cambell (defendant), 7/20/10. (please see EXIBT A).

(12) The plaintiff was on the, in fact placed on the list on 7/20/2010 by the Defendant Campbell himself. (see EXIBT B)

(13) Due to the way the Chaplain (defendant Campbell) failed to recognize the importance of the plaintiffs participation of the 'Eid-ul-Fitr' as part of his religious belief within three days immediately preceding the Ramadan fasting observation.

(14) When one is observing the fast of Ramadan, one must not intentionally consume anything during the day. That is to include water and/or medication unless it is necessary for preserving life (survival). Between sunrise and sunset a fasting individual must not intentionally consume anything for the fast to be valid. In accordance with the plaintiffs religious rules he was taking his medication only after sundown.

(15) Plaintiff believes defendants worked as together, if only by partial involvement, to submit plaintiff to conditions of confinement wherein plaintiff was more restricted and could not participate in the feast of Eid. The conditions he was placed

*[Handwritten margin note: "Missing Commentary"]*

## Statement of Facts (cont. from page 4b)

in, not only restricted him and put him in a secured status within the prison, but served no plenalogical purpose. That is to say that even though the plaintiff did not take medication during the day it did not effect Him in a way where he was unable to function nor did he act out by violated rules which would warrant the staffs concern and the need for a more secure placement. Not to mention, the plaintiff had already gone without the medication the 30 days of fasting and was only moved on the very last day of Ramadan. If the concern was that the inmate was not functioning at an appropriate level during Ramadan it may have been understandable. However, there was nothing to indicate that there's a viable concern because the inmate was not transferred on the grounds of their concern as the defendants allege, instead it was to infringe upon the inmates (plaintiffs) religious right; participate in the feast of Eid.

In addition to paragraph #13: ...Plaintiff had to bare the burden internally, which left the plaintiff in a very difficult situation and became emotionally disturbed and acted out mentally (This writer notes that plaintiff suffers from serious mental illness). The action and omissions of the institutions (CCI) staff created a substantial burden to the plaintiffs beliefs because it truly pressured the plaintiffs religious practice, given the plaintiff's state of mind, [adherent] that significantly modified his religious behavior (becoming mentally upset). and significantly violated his religious beliefs.

(16) Upon transferring to unit-7 from unit-6, the Sergeant's duty to make sure that his name was passed on to the receiveing

Unit (which he failed to do) to inform them of plaintiffs participation in the Fast and Feast. This was to be done in accordance with the instructions on the "Correspondence/Memorandum on Page 2 (EXBIT B-1).

(17) Mardell Petras is a state actor who is legally responsible for for Programs supervision. Defendant is sued individually because She did not make special provisions, as those even awarded to inmates in segregation who were allowed to participate in the Feast of Eid, for the inmates of the Special management unit. It was said that other Muslims in these units were allowed to participate in the Eid Feast but this is not true. And if in fact it were then there lies even less reason to exclude the plaintiff from     this well established religious practice. This makes for an isolated, arbitrary, and selective treatment of the plaintiff which is against equal protection laws.

(18) Plaintiff was not presented with a real reason that would warrant prohibition of his religious practice. Plaintiff had no other means to provide himself the adequate food    needed to fulfill the religious practice of the Eid Feast. Thus, this plaintiff was neither afforded the equal right to participate in the Eid Feast as did other inmates even in segregation status. This was an arbitrary manner of punishment that included placing the plaintiff, while finding a reason to, as subjecting to, unfair conditions of confinement that was used as an excuse,

along with a fabricated reasons, to deny plaintiff the right to freedom to exercise and complete religious practices.

(19) Plaintiff proposes a Policy Claim against the Defendants Greg Grams, Warden at C.C.I., and Sergeant S. Severson municipal policy making by deliberate choice among various alternatives that allow the cause of a violation of rights. The prison has adopted an unconstitutional policy/custom by having an express policy that, when enforced, causes a constitutional deprivation upon the plaintiff.

(20) Plaintiff was, in all actuality, the only Muslim practicing Islamic observations within the SMU, making him an easy target for discrimination, plus his vulnerability under his mental illness, whereas no one would expect him to be mindful of his religious rights and the protection that this great country affords as a matter of freedom. As the only Muslim practicing Islamic teachings as part of the religion, the plaintiff was

easily selected for discrimination being the only one on these SMU units and was treated poorly.

(21) Additionally, Defendant Franson corroborated a lie made by Defendant Campbell. ICE (grievance) reported that defendant Campbell said that inmates were notified of the process for Ramadan Feast (Eid-ul-Fitr) via posting on the unit. This was was verified by [defendant] Mr. Franson, who also made refernce as fact, that there were other inmates from SMU complex that attended the Ramadan Feast. When, in fact, there was only one other inmate who would have participated in the feast-was not on the SMU complex during the time of the Feast; this could be verified by account of record showing where this other inmate was when the Feast took place.

(See EXIBT H-1)

(22) The plaintiff was deeply saddened and felt that his religion was an inferior one. A depressive state set in for the plaintiff as he was not afforded the right to practice and expirience the full effect of participating in the Feast immediately following his Ramadan Fast. Missing out on something deemed important to Islam-because defendants had not the right sense to allow plaintiff freedom to exercise this right of religion-is a matter of law above negligence because the plaintiff had not posed any security threat to himself or others by accordingly practicing his religious beliefs. This writer remind this court that a concern about the plaintiffs health does not give rise to the denial of religious practice. Nor could there have been a legitimate concern about the plaintiffs health since he did take medication after sundown (as the Ramadan fasting requires for its validity) and because the alleged concern only arose on the very last day of Ramadan. Also, plaintiff, if not able to attend the Feast at the chapel, should have been given an appropriate Feast alike meal to acknowledge the importance of the feast for the plaintiff. This is what is done for those in the segregation unit; not even this opportunity was offered to the plaintiff. Furthermore, the plaintiff should not have been punished for not taking his medication since doing so would have been in violation of the Fast. For every day during Ramadan that a Muslim intentionally consumes (orally) anything during the hours between sunrise and sunset, he must remake each day

## Statement of Facts (cont. from Pg. 4d)

sometime before the commencement of the next month of Ramadan.

### B. Legal theory or cite appropriate authority:

(1) In reference to and incorporating paragraphs 1-22 of the statement of facts in the complaint, plaintiff alleges that the defendants violated his constitutional rights under the First Amendment when: Defendants violated his Free exercise Clause by not allowing the inmate to partake in the well established religious Eid-ul-Fitr Feast practiced by all muslims. (see Ford v. McGinnis, 230 F. Supp. 2d 338 (2002))

Prisoners retain their right to religious freedom under the First Amendment while incarcerated and are therefore entitled to a reasonable accommodation of their religious beliefs. This includes religious dietary beliefs, as prison officials must provide a prisoner a diet that is consistent with his religious scruples. The right to a reasonable accommodation of religious beliefs may only be infringed to the extent that such infringement is <u>reasonably</u> related to <u>legitimate</u> penological interest. (Cited case above provides detailed insight on Ramadan & Eid-ul-Fitr.)

(2) In reference to and incorporating paragraphs 1-22 of the statement of facts in the complaint, plaintiff alleges that defendants violated his constitutional right of religious freedom under the Fourteenth (14) Amendment when: Defendants discriminated against him arbitrarily by (1) punishing him for following his religion and not consuming any medication (orally) during the hours of the day and (2) by not making it possible for him to partake in the Feast of Eid-ul-Fitr; plaintiff was subjected to regulations that made it possible for officials to infringe upon his religious freedom; prison requirements for mental health procedures violate religious principles. (see Turner v. Safley, 482 U.S. 78 (Supreme Court 1987))

(3) Policy Claim: In reference to and incorporating paragraphs 1-22 of the statement of facts in the complaint, plaintiff alleges that defendants, as municipal policy makers, made a deliberate choice among various alternatives, to making special provisions for those practicing

religious beliefs under a well established religion, as the policy or custom created a substantial burden to the plaintiffs right to exercise his religion. Defendants are responsible for properly training and supervising employees as they failed to do so. (see: Palmer v. Marion County, 327 F.3d 588,595(7th Cir. 2003), Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690-92 (1978); see also Frake v. City of Chicago, 210 F.3d 779, 781 (7th Cir. 2000))

(4) Finally, in 2000, congress passed the **Religious Land and Institutionalized Persons Act (RLUIPA)**, another law that protects Prisoers' prisoners' rights to practice their religion. Although this writer is uncertain on how to allege and apply this act, nevertheless, will state that like the RFRA, RLUIPA states that a prison cannot "impose a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the burden is: (1) "in furtherance of compelling governmental interest" and (2) "the least restrictive means of furthering that compelling interest." (In reference to and incorporating paragraphs, the plaintiff does allege the defendants violated the rights under this Act.)

**B. legal theory or cite appropriate authority (continued):**

Supplemental Jurisdiction [Invoked] (28 U.S.C. §1367)

STATE LAW CLAIMS:

(1) In reference to incorporating paragraphs 1-22 of the Statement of facts, plaintiff alleges that defendants acts and omissions breached their ministerial duty when failing to make special provisions that would have reasonably provided him with the right to practice his religious beliefs in its totality because the law imposes a duty, by all means necessary, upon prison officials-to leave open a way for prisoners to exercise their constitutional rights. Furthermore, the defendants breached their ministerial duty by negligently ignoring readily available, obvious, and easy alternatives that could have served as acceptable means for providing the plaintiff with reasonable and fair opportunity to follow the practices set forth by his religion. (See: Lister v. Board of Regents of University of Wisconsin System, 72 Wis.2d 282, 300 (1976)).

(2) In reference to and incorporating paragraphs 1-22 of the statement of facts in the complaint, plaintiff alleges that defendants acts and omissions give rise to a Wisconsin Constitutional violation of Articles 1§1 and 1§6 because the mistreatment of a person (the plaintiff) who has a mental illness was also void of his right to equality with respect to the mentally ill and/or anyone who practices Islam (religious beliefs) in an identical or otherwise similar fashion.

------------------------------------------------------------

V.   **RELIEF YOU REQUEST**

State briefly and exactly what you want the court to do for you. Make no legal arguments. Do not use this space to state the facts of your claim. Use it only to request remedies for the injuries you complain about.

Wherefore, plaintiff respectfully prays that this court enter judgment granting plaintiff: A declaration that the acts and omissions described herein violated the plaintiff's rights under the Constitution and laws of the United States....

( RELIEF CONTINUED ON: Page 5a ⟶ )

I declare under penalty of perjury that the foregoing is true and correct.

Complaint signed this 27 day of December, 20 10.

Signature of Plaintiff(s)

*Donald Means*

(If there are multiple plaintiffs, each must sign the complaint)

Prisoner I.D. Number(s) 89203

27 December 2010
Alyce M Monjan
4-11-2011

**V. Relief [Plaintiff] Request**
(continued)

(1) Compensatory Damages in the amount of one-hundred & twenty five thousand ($125,000) dollars, against all defendants, jointly and severally - $75,000 dollars of said relief to be given to plaintiff's victim.

(2) Punitive Damages in the amount of Thirty-five thousand ($35,000) dollars, against all defendants, jointly and severally, to be given to plaintiff's victim also.

(3) A jury trial on all issues traible by jury
(
(4) plaintiff's costs in this suit

(5) Any additional relief this court deems just, proper, and equitable.

Dated:_____

                                              Respectfully submitted,

                                              _____

--------------------------------------------------------------------

**VERIFICATION:**

   I, _Donald Means_, have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Winnebago, Wisconsin this 27 day of December, 2010.

Date: 12-27-10            _Donald Means_
                          Signature of Claimant

_DONALD MEANS_, being duly sworn, under oath, deposes and says that he is the claimant above named; that he has read the above and foregoing complaint under the civil rights act, 42 U.S.C. § 1983, and that the same is true to the best of his knowledge and belief.

Date: 12-27-10            _Alyce M Monyan_
                          Notary Public, State of Wisconsin

                          My commission expires: 4-11-2011